May it please the Court, I'm Gilbert Levy, representing the appellant Dexter Wendler. There are two issues before the Court in this appeal. The first issue is whether or not the district court erred in declining to award an additional one-point downward adjustment for acceptance of responsibility under Guideline Section 3EB2. Just to briefly recount the facts, Mr. Wendler went to trial on a felon in possession count. That trial resulted in a hung jury. Shortly before the retrial, Mr. Wendler pleaded guilty to the felon in possession count. He also pleaded guilty to a second count in the superseding indictment, charging him with Social Security fraud. He had not previously been indicted for the Social Security fraud. And the government conceded in the plea agreement that if Mr. Wendler otherwise was eligible for acceptance of responsibility, he would also be eligible for the additional one-point downward adjustment because his guilty plea was timely. The Guidelines do not say, contrary to the government's argument, that in order to be eligible for the additional one-point downward adjustment, the guilty plea has to be timely as to all counts. What the Guidelines say is that in order to be eligible for acceptance of responsibility at all, the defendant has to accept responsibility as to all counts in the indictment or the information. The government's argument confuses, with all due respect, the government's argument confuses eligibility for acceptance of responsibility with the determination as to whether or not you should get the additional point. The district court found in this case that Mr. Wendler was eligible for acceptance of responsibility because it did award the two-level downward adjustment, finding that, in fact, he had accepted responsibility as to all counts. The question then remains as to whether or not the guilty plea was timely. I would submit respectfully that that is a fact-based determination, which depends upon whether or not the defendant saved the government and the court the time and expense of trial. Clearly, in this case, Mr. Wendler did permit the government to conserve its judicial resources and avoid preparing for trial when he pleaded guilty to the second count and the superseding information, which had not been previously indicted at all. So I submit that, factually, Mr. Wendler did meet the test for getting the additional point. The case law seems to suggest that if the guilty plea is timely, then the additional one-point downward adjustment is automatic. And I believe, at least factually, the government has conceded that the guilty plea was timely as it made this concession in the plea agreement itself. Moving on to the second issue, the question is whether or not the court correctly determined Mr. Wendler's relevant conduct. In this case, when the agents went into Mr. Wendler's home, they found a piece of fictitious identification, which he had obtained with a fictitious Social Security card in the name of Patrick Harmon. Apparently, Mr. Wendler was part of a scheme to obtain fictitious Washington State identification cards. In another instance, he obtained a fictitious identification card for an individual by the name of Cindy Rousa. Ms. Rousa used, well, excuse me, the individual was another person, Michelle Devine. The identification was in Cindy Rousa. Michelle Devine used this other fictitious identification on one occasion to obtain $5,000 from a bank. She attempted to use it on another occasion to make a $5,000 withdrawal. She was apprehended, and that withdrawal attempt was unsuccessful. And then in a number of other transactions, she used a credit card, a fictitious credit card that had been obtained for her by Mr. Wendler to gain additional monies, but these additional transactions did not involve any use of fictitious identification. So, in other words, the only connection between the count of conviction and the otherwise relevant conduct is that both involved a piece of fictitious identification. However, the fictitious identification for which Mr. Wendler was convicted was never used by anyone to obtain any loss amount from anyone. It was simply found sitting in his house when the agents went in there with a search warrant. The test in this case, as I've argued in my brief, is a fact-based test. It's based upon the factors which are set forth in United States v. Hahn. There has to be, in order to conclude that the relevant conduct or the allegedly relevant conduct is part of the same course of conduct or common scheme of plan, courts look to regularity, similarity, and temporal proximity. In this case, there may have been temporal proximity because the two pieces of identification were obtained at the same time. However, there was no similarity between the count of conviction and the allegedly relevant conduct. There was no regularity. They did not involve, in any sense of the word, the same type of activity. Therefore, we submit respectfully that the district court erred in concluding that Mr. Wendler's activity with Michelle Devine, a.k.a. Cindy Rouse, were correctly included as relevant conduct, should not have been included, and the district court incorrectly calculated his guidelines. I'll reserve the rest of my time. May it please the Court, my name is Jeffrey Cooper-Smith, and I'm representing the United States on this appeal. I'm an assistant United States attorney with the U.S. Attorney's Office in Seattle. I was also trial counsel in this case. The district court's judgment was correct, and it should be affirmed,  First and briefly, there's the issue of whether Mr. Wendler should have been awarded the extra point under Section 3E1.1B of the Sentencing Guidelines for timely accepting the plea. And as we said in our brief, that issue has already been decided, we believe, by this Court. In the case of the United States v. Ginn, the Court applied Section 1B1.1 of the Guidelines. That section sets out a recipe, if you will, to how the Sentencing Guidelines should be applied. And very clearly, as the Ginn Court noted, that you have to apply the acceptance provision, that is, the entirety of Section 3E1.1, after the grouping rules in Part D of the Sentencing Guidelines were applied. That's exactly what happened in this case. The grouping rules were applied, which raised the total offense level from 16 to 18. And then, and only then, did the Court apply Section 3E1.1. The Court found that Mr. Wendler accepted responsibility enough or sufficiently to get the two points, however, that he did not enter a timely plea. And that follows, I think, ineluctably, from the Ginn case. And just to make that clear, as we pointed out, in the Eleventh Circuit case of Bourne, the Court had an occasion to specifically apply Ginn and Section 1B1.1 of the Guidelines to a case where the defendant was claiming he should be awarded the one point for timely acceptance, even though he had gone to trial on some of the counts, or at least he hadn't timely accepted on all the counts. And again, the Court said you have to accept responsibility and enter a timely plea as to all counts in order to get the extra one point. Our situation here is a little different from that in Ginn, which is that he didn't hold out on a count. In fact, he did plead guilty on both counts before the second trial, so the second trial didn't take place. I believe in Ginn, Your Honor, there were two bank robberies and there was a guilty plea on one and there was a bench trial on the other bank robbery. In that situation, the Court, again, was only dealing with the issue of acceptance, in other words, of two points, not the timely plea situation. But since he went to trial on one of the bank robberies, the Court said he did not accept responsibility on that offense and you have to accept responsibility on all offenses that were part of the offense. And ultimately, here, it could be argued that he did accept responsibility on all the offenses, both counts. You already had a trial on one of the counts, so it's sort of like a kind of mirror image exactly, but I understand how Ginn applies, but this factual setting isn't exactly the same. Is it the basis, and you may have multiple bases, but is your argument based principally on the fact that you've already gone to trial on one of the counts, so it's too late to qualify for that third point? Yes, in a way, Your Honor. It's obviously factually true. And in the plea agreement, I think it reflects it when the government was recommending that he get the extra point for a timely acceptance. It's definitely true that by pleading guilty to that count two, social security fraud, he did save the government the time and expense of going through a trial on that particular count. And as a factual error. He went to trial a second time on the other count. Well, he would not qualify. I don't think there's any argument from the defense in this case, although we hear from Mr. Levy, that he qualified for timely acceptance on the gun count, count one. That's because, first, he had already gone to trial. And second, we were only four days away from the retrial of that count. And the case law is very clear, and we've cited some of it, that a defendant who pleads guilty four days before trial, and at that point, the parties are certainly prepared for trial. The government was certainly ready for trial, especially having tried the case once. So there's no argument, I don't think, in this case, and no dispute, that he did not enter a timely plea as to count one. It's true that he entered a timely plea as to count two, but under Ginn, under Born, applying Section 1B1.1 of the Guidelines, he cannot get that timely acceptance point unless he was timely as to both counts. Moving to the second issue, the relevant conduct point. And I think that's a recommendation by the government, and I think it was based on, and if you look at the language of the plea agreement, it speaks specifically as to count two. It's a recommendation by the government. Having researched the issue for this appeal, we're simply in a posture of defending   a legal ruling by the district court, and we believe it was a correct one. Your opponent has argued that you should be a stop for making the arguments you've made today. Yes, Your Honor. We addressed that point in our brief. Judicial estoppel under the law of the circuit cannot be applied unless the district court accepted the argument below. And, of course, in this case, it did not. The district court did not accept the government's position. Second, and that's all there is to the judicial estoppel point. But going further, there's another view of judicial estoppel which doesn't apply in the circuit, but just to address it, the so-called minority view that if the government has somehow played fast and loose, then the court could apply judicial estoppel. I don't think anyone is claiming that that occurred in this case. If there are no more questions about that issue, I can move to the relevant conduct issue. That issue involves a very factual determination, and that's why it's reviewed for clear as to whether or not the conduct that Mr. Wingler engaged in during the months of September and October of 2000 were all part of a pattern or common scheme or plan or same course of conduct. And, interestingly, there's no dispute on the facts. In other words, this is not a case where there were controverted issues as to what occurred. There's no dispute on the facts at all as to the following. Mr. Wingler was part of an identification theft conspiracy. There were eight individuals, including Mr. Wingler, who were part of that conspiracy. They were charged with various offenses relating to the identification theft, either Section 1028 of Title 18, the social security fraud offense that Mr. Wingler pled guilty to, which is a Title 42 offense, or bank fraud, which is Section 1344. There were common victims, that is, the false identification cards that were obtained from the corrupt Department of Licensing employee were all State of Alaska employees. So there were common victims. Mr. Wingler got two false IDs on October 7th in his own name or in the name of Patrick Harmon for himself and in the name of Sharon Hudson or for Sharon Hudson. He got two more IDs on October 14th. That included the Cindy Rausser ID. Mr. Wingler directed Ms. Rausser, and this is undisputed, to commit bank fraud. She committed $10,000 worth of bank fraud with the Cindy Rausser ID. She committed another $45,000 of bank fraud with her own name, but with credit card information that was supplied to her. In fact, manufactured counterfeit credit cards supplied to her by Mr. Wingler. All of that is part of a pattern, and I think the guideline commentary may choose a word that best describes what Mr. Wingler did. During September and October, he was on a spree to commit identification theft, bank fraud, Social Security fraud, which is what Mr. Wingler applied to, is a type or one of the statutes that's commonly used in charging identification fraud. All of this conduct is very closely related in time. It has common accomplices, Mr. Wingler, Mr. Vine, and if you look at the PSR, other co-conspirators like Stephen Wesley, and there were many phone calls, as identified in the PSR, between Mr. Wingler and Mr. Wesley, including on the days that these false IDs were obtained, common accomplices, they're all identification theft. Mr. Levy says that Mr. Vine's use of the fraudulent credit cards was not using any kind of false identification, and we don't agree with that argument. In fact, if you look at the definition of means of identification in the United States Act of 1918, you'll find that means of identification is defined as not only false identification cards or false names or false Social Security numbers, but also any other electronic number that can be used as a means of identification, which would include, under the statute, credit card account information. So Mr. Wingler committed identification fraud. He directed Ms. Divine, during a course of two months, to commit identification fraud using false IDs, using false credit cards. And Mr. — it's true that Mr. Wingler's obtaining of the Patrick Harmon ID, there's no evidence in the record of how exactly Mr. Wingler used or planned to use that, but I would suggest to the Court that it's a very fair inference that it was not a benign purpose that Mr. Wingler obtained an identification card in the name of Patrick Harmon, and that it was not the employee, an innocent victim. If there are no questions on that issue, thank you very much. Thank you. Mr. Levy. Your Honors, the Court has correctly observed this case is distinguishable from the Ginn case in that Mr. Wingler, in this case, did not hold out on any of the counts of conviction. He pleaded guilty to all the counts. He was found to be eligible for acceptance of responsibility by the district court. Other cases that counsel cites in his brief, Kleinbrill and McDowell, both of which are all — Ginn, Kleinbrill, and McDowell are all relied upon by the Eleventh Circuit in the Boren decision, and neither Ginn, Kleinbrill, or McDowell say what the Boren court says that these cases say. All of these other cases say that if you hold out on a count, you don't get acceptance. And they do not say that if your guilty plea is untimely as to a count, then you don't get the third point. And so it's our position that the Boren case was incorrectly decided based upon the precedent that that court cited, and it should not be followed by this Court. The issue with respect to estoppel is simply this. The issue of timeliness is a fact-based determination and depends, as I've indicated previously, on whether or not the government is able to conserve its resources. Essentially, in the plea agreement, the government conceded factually that the guilty pleas were not timely, if, in fact, it conceded factually that they were timely in the plea agreement. I'm really dealing with a legal question. I mean, the district court heard the government's position, but I inferred, took a look at the district court's position. I'm not sure that it's unfair for the government to say, well, we made the factual representation we were supposed to make. On that record, the district court decides the law doesn't justify the third point, and now they're in a position to try to uphold the district court's decision.   I think that's a fair question. I concede that we're dealing with a legal question. The legal question here is simply whether or not the district court correctly applied the guidelines, and we contend that it did not. With respect to the other issue, counsel has fairly stated that we did not contest that Mr. Wendler was – may have been part of this broader conspiracy, but the point is simply that the count that he pleaded guilty to, the Social Security count, had – there's no evidence that this count of conviction had anything to do with the broader conspiracy. Based upon this record, it's just as likely for the district court to have concluded that he may have obtained this one piece of identification for some purpose completely unrelated to the broader conspiracy, and that the only connection between the count of conviction and the allegedly relevant conduct is that the fictitious identification in each case was obtained by a similar method and from the same source. And based upon that record, we submit there's not enough connection between the count of conviction and the allegedly relevant conduct as part of the guideline calculation. If the Court adopts that position, then I think there becomes – it opens the door to potentially anything, that there has to be some sort of structural limitations on what is and what is not relevant conduct, and clearly the connection between the two sets of facts are so tenuous that the Court ought not to conclude that this was relevant conduct. Thank you. We thank both counsel for their arguments, and the case is submitted.
judges: Browning, Alarcon, Clifton